Bernard S. Meyer, J.
Plaintiffs bring this action pursuant to subdivision 7 of section 167 of the Insurance Law. They hold a judgment against Randy Homes, Inc. resulting from personal injury to plaintiff Mary Johnson incurred when the cellar stairs in a home erected by Randy Homes Inc. pulled away from the wall. At the time of Mrs. Johnson’s accident the home was owned by one Sidney Thaler, for whom Mrs. Johnson worked. Defendant issued to Randy Homes, Inc. a comprehensive general liability policy which a jury has found included an indorsement entitled “ Exclusion of Products Hazard” reading “It is agreed that the policy does not apply to the products hazard as defined therein.” Contending that its policy did not cover the *985 Johnson claim because of the “ completed operations ” portion of the products hazard definition set forth in the policy, defendant, though notified of the Johnson action, refused to defend it. Randy Homes, Inc. obtained its own counsel and answered, but defaulted in appearance at the trial. Defendant concedes that its policy was in force on December 3, 1960, the day of Mrs. Johnson’s accident, that it received notice of the Johnsons’ action, and that its sole basis for disclaiming was lack of coverage. The answer admits, and the court finds, that on May 8, 1965 a copy of the judgment obtained by the Johnsons against Randy Homes, Inc. was served upon defendant as required by paragraph (b) of subdivision 1 of section 167 of the Insurance Law. Though the judgment held by plaintiffs was obtained after default by the insured, the insurance company defendant cannot go behind the judgment and raise defenses going to the merits (Manard v. Hardware Mut. Cas. Co., 12 A D 2d 29). Plaintiffs, who stand in the shoes of Randy Homes in enforcing the policy, are, therefore, entitled to recover unless defendant’s construction of the policy is correct. Both parties agree that interpretation of the policy is for the court.
The policy states in Item 2 that the 1 ‘ Business of the named insured is Building Contractor.” Item 3 includes the statement that “ The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charges. The limit of the company’s liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto ”, and under Coverage A— “ Bodily Injury Liability ” in the box for ‘ ‘ Limits of Liability ’ ’ shows the typewritten figure ‘ ‘ 100,000 ’ ’ next to the printed words “ each person ”, the typewritten figure “ 300,000 ” next to the printed words “ each accident ”, and a blank in the space next to the printed words ‘ ‘ Aggregate Products”. Under Item 4 of “ Declarations ” in Schedule No. 1 appear boxes with printed subheads. Division (a) is entitled “ Premises — Operations division (c), “ Independent Contractors division (d), “ Products — Including Completed Operations ”. Division (d) is left blank; in division (c) has been typed “ Construction operation — contractor (not railroads) excluding operations on board ships ” and appropriate rating and premium data; in division (a) has been typed “ Contractors— Construction or erection executive supervisors exercising supervision through superintendents or foremen, no direct supervision ’’followed by appropriate rating and premium data; and on a separate line “Model Homes”, followed by separate rating and premium data, and on a further separate *986 line “ Real Estate Agents — including completed operation — clerical and salesmen ’ ’ followed by its own rating and premium data.
The “ Insuring Agreements ” define “ Coverage A — Bodily Injury Liability ” as follows: “ To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person and caused by accident.” Mrs. Johnson’s accident having occurred within the policy period and the judgment for her bodily injury being within the liability limits, defendant insurer is obligated to pay the judgment under the policy provisions so far recited. Defendant argues, however, that it is relieved of that liability by the fact that the “ Aggregate Products ” space in Item 3 and the division (d) space in Item 4 have been left blank, by the indorsement reading “ It is agreed that the policy does not apply to the products hazard as defined therein ’ ’, and by the definition of products hazard set forth in paragraph 3 (c) of the “ Conditions ” of the policy. That definition reads as follows:
“(c) products hazard. The term ‘ products hazard ’ means
“ (1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
“ (2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be ‘ operations ’ within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification *987 stated in division (a) of the declarations specifically includes completed operations. ’ ’
Operations by Randy Homes Inc. at the premises where Mrs. Johnson’s injury occurred had been completed and the house transferred to Mr. Thaler prior to Mrs. Johnson’s accident. If only the first two clauses of subdivision 2 of the 1 ‘ products hazard ” definition are considered, the accident is excluded from coverage by the plain and unambiguous wording of the policy (Berger Bros. Elec. Motors v. New Amsterdam Cas. Co., 293 N. Y. 523). However, the policy must be considered as a whole and, under familiar principles, for the insurer to benefit from the exclusion the burden is upon it to show (1) that it would be unreasonable for the average businessman reading the policy to conclude that the accident was covered and (2) that its own construction was the only one that could fairly be placed on the policy (Sincoff v. Liberty Mut. Fire Ins. Co., 11 N Y 2d 386; Vito v. General Mut. Ins. Co., 15 A D 2d 289, app. den. 11 N Y 2d 645). Plaintiffs argue that ambiguity, which must be resolved in favor of coverage, exists because (1) the two clauses appear not as a “ completed operations ” exclusion but as part of the definition of “products hazard ”, and (2) the third clause of the definition creates an exception to the exclusion. The court agrees that there is coverage.
Significant in the construction of the policy are the facts that it is denominated a comprehensive general liability policy (Sincoff v. Liberty Mut. Fire Ins. Co., supra, p. 391; National Screen Serv. Corp. v. United States Fid. & Guar. Co., 364 F. 2d 275, 279-280, cert. den. 385 U. S. 958) and that, as already stated, the ‘ ‘ products hazard ’ ’ definition aside, the terms of the policy encompass an accident such as Mrs. Johnson’s. The question then is whether the average businessman would understand from the policy as a whole that coverage of an accident such' as Mrs. Johnson’s had been excluded by the subsequent provisions and indorsements.
By the weight of authority, the indorsement excluding “ products hazard ’ ’ and the definition of that phrase quoted above are not sufficiently clear to exclude from coverage the completed operation of a contractor who sells no product. As to injuries caused by the contractor’s work occurring during the policy period there is coverage notwithstanding that the injury occurs after the contractor has completed his operations, because it is reasonable for such a contractor to conclude that both subdivisions of the products hazard definition relate only to products: — Insurance Co. of North America v. Electronic Purification Co. (63 Cal. Reptr. 382) (swimming pool cleaner); *988 Miller Elec. Co. v. Employers’ Liab. Assur. Corp. (171 So. 2d 40 [Fla.]) (electrical contractor); New Amsterdam Cas. Co. v. Addison (169 So. 2d 877 [Fla.]) (electrical contractor); Maretti v. Midland Nat. Ins. Co. (42 Ill. App. 2d 17) (fireworks exhibitor); Kendrick v. Mason (234 La. 271) (sewer line installer) ; Morris v. Western Cas. & Sur. Co., 421 S. W. 2d 19 [Mo.]) (plumbing, heating and electrical contractor); Rafiner Elevator Works v. Michigan Mut. Liab. Co. (392 S. W. 2d 240 [Mo.]) (elevator service contractor); Kissel v. AEtna Cas. & Sur. Co. (380 S. W. 2d 497 [Mo.]) (building contractor); Lumbermens Mut. Cas. Co. v. Pattee (234 A. 2d 537, 539. [N. H.]) (plumbing contractor; notwithstanding interpretive indorsement incorporating the phrase “ whether or not goods or products are involved in such operations ”); Peerless Ins. Co. v. Clough (105 N. H. 76) (contractor erecting houses on land of others); Butler v. United States Fid. & Guar. Co. (197 Tenn. 614) (carpentry-contractor) ; McNally v. American States Ins. Co. (308 F. 2d 438 [C. A. 6th, Mich.]) (elevator inspection); Hoffman & Klemperer Co. v. Ocean Acc. & Guar. Corp. (292 F. 2d 324 [C. A. 7th, Ill.]) (building cleaner); Gehrlein Tire Co. v. American Employers Ins. Co. (243 F. Supp. 577, affd. 348 F. 2d 918 [C. A. 3d, Pa.]) (tire mounter); Nielson v. Travelers Ind. Co. (174 F. Supp. 648, affd. 277 F. 2d 455 [O. A. 8th, Iowa]) (sewer excavator) ; Hercules Co. v. Royal Ind. Co. (171 F. Supp. 746 [S. D., N. Y.]) (ships cleaner); Heyward v. American Cas. Co. (129 F. Supp. 4 [E. D., S. C.]) (plumbing and heating contractor); see Arnold v. Edelman (392 S. W. 2d 231 [Mo.]) (installer of revolving door); McAllister v. Century Ind. Co. (24 N. J. Super. 289, affd. 12 N. J. 395) (excavator); Ocean Acc. & Guar. Corp. v. Aconomy Erectors (224 F. 2d 242 [C. A. 7th, Ill.]) (steel erectors); Clampett, Reverse Equivocation: Declarations v. Exclusions, 29 Ins. Counsel J. 226; Ann. 54 ALE 2d 518. As the California court put it in Insurance Co. of North America v. Electronic Purification Co. (63 Cal. Reptr. 382, 387, supra): “ If subdivision (2) eliminated coverage for completed general operations, not related to products, as the insurer urges, it would involve a subject utterly unrelated to products which no ordinary insured would expect to find under the heading ‘ Products Hazard.” The ambiguity, as Clampett states it {op cit., p. 227) “ arises from combining products, which is one thing, with completed operations, which is another, in a single exclusion; for, if the insured deals in a service rather than a product, it is not clear why he should purchase products liability coverage, and neither is it clear why his imaginary products liability should be excluded.”
*989 The court recognizes that there are cases to the contrary (Neumann v. Wisconsin Natural Gas Co., 27 Wis. 2d 410; McGann v. Hobbs Lbr. Co., 150 W. Va. 364; Green v. Ætna Ins. Co., 349 F. 2d 919 [C. A. 5th, Tex.]; Orchard v. Agricultural Ins. Co., 228 F. Supp. 564, affd. 340 F. 2d 948 [C. A. 9th Ore.]; Waterman S. S. Corp. v. Snow, 222 F. Supp. 892, affd. 331 F. 2d 852 [C. A. 9th, Ore.]; Clauss v. American Auto. & Ins. Co., 175 F. Supp. 641 [E. D., Pa.]; see Baker v. Maryland Cas. Co., 73 R. I. 411) but they are clearly in the minority. It realizes also that none of the cases cited states New York law. No New York case found is clearly in point, and such as touch on the question are, with one exception, not inconsistent in result with the majority rule. Thus Berger Bros. Elec. Motors v. New Amsterdam Cas. Co. (293 N. Y. 523) involved a condition excluding defective workmanship; Ross v. Maryland Cas. Co. (9 N Y 2d 876) concerned only the obligation to defend; Vito v. General Mut. Ins. Co. (15 A D 2d 289, app. den. 11 N Y 2d 645); Cooney v. Liberty Mut. Ins. Co. (284 App. Div. 328); Spatz v. Ætna Cas. & Sur. Co. (36 Misc 2d 950) and Lumbermens Mut. Cas. Co. v. Town of Pound Ridge (362 F. 2d 430 [C. A. 2d N. Y.]) all turned on whether the operation had in fact been completed within the meaning of the policy (though some contain language suggestive of the majority rule); and Cohen v. Jacoby (27 Mise 2d 396) found the provision in question ambiguous, but for a different reason. Only Security Ins. Co. v. Utilities Constrs. (29 A D 2d 623) reached a result inconsistent with the majority rule, and so far as appears from the memorandum decision in that case the majority rule was not urged upon the court.
The court is, furthermore, aware that, other than the policy’s statement of the business of the named insured as “ Building Contractor ’ ’, there is no evidence in this case concerning whether Randy Homes, Inc. simply erected houses under contract on land owned by some other person or entity or was a builder-vendor, erecting homes on its own land and then transferring the improved property to purchasers such as Thaler. It does not, however, regard the distinction as material. If the former situation be the fact, Randy Homes, Inc. clearly was performing a service and not selling a product (Peerless Ins. Co. v. Clough, 105 N. H. 76; see Nielson v. Travelers Ind. Co., 174 F. Supp. 648, 652, affd. 277 F. 2d 455, supra). If the latter situation be the fact, then, bearing in mind that what governs is not the legal meaning'of the words used but the manner in which they might reasonably be construed by the average person or the ordinary businessman (Bronx Sav. Bank v. Weigandt, 1 N Y 2d 545, 553; Harris v. Allstate Ins. Co., 309 N. Y. 72; Tonkin v. California *990 Ins. Co., 294 N. Y. 326), the result would not be different. Though houses built constitute part of the gross national ‘1 product ” and in the broad sense of the word are the “ product” of the labor of the various trades engaged in their construction, they are not “products” in common parlance. Bather they are real estate transfers or building construction, while in common parlance the word “ products ” means manufactured goods, chattels. Pertinent is the following portion of the opinion in Kissel v. Ætna Cas. & Sur. Co. (380 S. W. 2d 497, 503):
“ It [defendant insurer] says that the idea that a contractor has no ‘ product ’ is wholly illogical, erroneous and fallacious and that the building of the athletic field and the school are the ‘ products ’ of their builders and that what a contractor leaves behind when his work is finished — his ‘ completed operation ’ — is his ‘ product ’.
“ We do not agree with the defendant’s position in attaching such a broad meaning to the term products as used in the insurance policy in question. We do not think it was the intended policy meaning when using the term products and this appears more convincingly so when the policy itself states the nature of the insured’s business as 1 contracting
(See, also, Peerless Ins. Co. v. Clough, 105 N. H. 76, 81, supra; Kendrick v. Mason, 234 La. 271, 294-295, supra; Nielsen v. Travelers Ind. Co., 174 F. Supp. 648, 653-654, supra.) Relevant also is the fact that chapter 14 of the Restatement, 2d, Torts, which is the portion of the Restatement covering products liability, is entitled “ Liability of Persons Supplying Chattels for the Use of Others ”. The point is not that a builder-vendor of homes cannot incur a “products hazard” or “products liability ”, but that the ordinary businessman would not interpret a “ products hazard ” exclusion as related to such a business.
The third clause of subdivision 2 of the “ products hazard ” definition presents a further, though not quite as clear, reason for construing the policy to cover the Johnson accident. That clause excepts from the exclusion “(d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations.” In Cohen v. Jacoby (27 Misc 2d 396, 399) that language was construed to create an ambiguity requiring construction against the insurer because ‘ ‘ one reading the policy would have a right to assume that, in any event, it would cover the operations specifically set forth in ‘ Division (a)’, even if completed.” The instant case is even stronger for, as already noted, the words 11 including completed operation ” appear in division (a) of the declarations. True it is that that phrase appears between “ Real estate agents ” and *991 “clerical and salesmen ”, in a classification stated on a line separate from “ Contractors ”. It is, however, also true that the policy and all its part are to be construed as a whole and so as to give harmonious effect to all parts (Perth Amboy Drydock Co. v.New Jersey Mfrs. Ins. Co., 26 A D 2d 517; see 29 N. Y. Jur., Insurance, §§ 602-603) and that to construe the words “ including completed operation ” to apply only to real estate agents leaves those words without meaning. This is so because (1) as the court may judicially notice (see Matter of Castle Hill Beach Club v. Arbury, 2 N Y 2d 596, 606) the only “ operation ” engaged in by a real estate agent employed by a builder is transportation of prospective purchasers to and from the builder’s houses, showing the houses, and attendance at closings, (2) at closings the real estate operation would not have been completed, (3) during that part of such “ operation ” which takes place at the houses, they would be ‘1 owned * * * or controlled by the named insured ” and, therefore, any accident at the premises would not in any event be excluded by the completed operations definition, and (4) transportation to and from the houses is expressly excluded by paragraph (c) of “ Exclusions ”, which provides:“ This policy does not apply: * * * to * * * operation, use, loading or unloading of * * * automobiles if the accident occurs away from such premises or the ways immediately adjoining”. The phrase “including completed operation ” was typed in division (a) of the declaration with the intention that it have some meaning and effect; it will have none if it is held to apply to real estate agents only. The construction that it applies solely to the “ operations ” of real estate agents is, therefore, not the only one that can fairly be placed on the policy. For the foregoing reasons judgment will be entered for plaintiffs.