Rosemary **RIESCHL**, Special Administratrix for the Estate of Paul Antonio Davis, deceased, Respondent,

v.

**TRAVELERS INSURANCE COMPANY**, Appellant.

No. 51794.

Supreme Court of Minnesota.

Dec. 17, 1981.

Johnson, Fredin, Killen, Thibodeau & Seiler and James A. Wade, Duluth, for appellant.

Louis D. Bass, Minneapolis, for respondent.

AMDAHL, Justice.

This is an appeal by Travelers Insurance Company from an order of the Hennepin County District Court declaring that the insured had not breached the cooperation clause of his automobile liability policy. Because the trial court's finding that the insurer did not meet its burden of proving lack of cooperation is supported by the evidence as a whole, we affirm.

The insured, Paul Davis, was an iron worker whose permanent residence was in Massachusetts but who was employed in the Duluth-Two Harbors area by American Bridge and Hoist Company. His involvement in an automobile-train collision precipitated this declaratory judgment action by the administratrix of his estate.

The record indicates that on December 6, 1977, Davis and Edward Seals, a coworker, had been drinking at several bars in Duluth and Two Harbors. Davis apparently played pool with several persons at the Harbor Bar in Two Harbors while Seals obtained their paychecks from the employer. Davis and Seals left the Harbor Bar together in Seals' automobile and were involved in an accident near Two Harbors. As a result of the collision, Davis suffered multiple injuries and Seals died.

Immediately after the collision, Davis maintained that he was not the driver of the automobile and that his last recollection prior to the accident was of Seals driving with an unidentified third person in the front seat of the car.

On December 9, 1977, Richard Grayson, Travelers' Casualty Claims Adjuster, spoke with the hospitalized Davis by telephone.

Davis recounted his version of the accident, that he was not driving at the time, and that the car involved was not his. He stated that he did not want Travelers involved in any claim and mentioned that he was retaining an attorney. Grayson then requested that Davis provide him with the attorney's name or suggested that the attorney contact him with information relating to the accident.

On December 12, 1977, Grayson called the Duluth Police Department but was unable to obtain full details of the accident because no party had authorized release of the police report. Grayson's subsequent conversation with Seals' widow did not result in his authorization to look at the police file. Grayson's later attempt to contact Davis in writing at the address listed on the insurance policy was unsuccessful and the letter was returned unopened.

On December 28, 1977, Grayson contacted Patrick O'Brien, Davis' attorney. Counsel informed Grayson that he had the police report and that a hearing against Davis on charges of criminal negligence stemming from the accident was scheduled for January 16, 1978. Although O'Brien offered to provide Grayson with all papers included in Davis' file, Grayson declined, explaining that he would meet with the parties and examine the papers at the omnibus hearing. Although Grayson's supervisor later instructed him to contact Davis' coworkers and neighbors to obtain more information, Grayson never complied with that directive.

The postponement of the omnibus hearing scheduled for January 16 prompted Grayson to write to Davis, in care of his attorney, stating that Travelers was reserving its noncooperation defense and requesting Davis to contact him. Again there was no request by Grayson for copies of the police reports because Grayson first wished to speak with the insured in person. Davis received this correspondence when he returned to Duluth for the rescheduled omnibus hearing and called Grayson on January 25, 1978. When he was unable to reach Grayson, Davis left his telephone number and the address of his current employer.

Grayson returned the call and left a message requesting that Davis call him, but the call was never returned.

On May 25, 1978, Grayson requested Davis' attorney to obtain information as to his whereabouts and thereafter the insurer sent a final letter to Davis at his employer's address on July 25, 1978. Davis, however, had been stabbed to death in an unrelated incident on July 16, 1978 in Springfield, Massachusetts. Thereafter, Travelers formally denied coverage on the ground of lack of cooperation of its insured.

The estate of Seals commenced a wrongful death action against Davis' estate on June 22, 1978, and, based upon Travelers' denial of coverage, the plaintiff, special administratrix of Davis' estate, commenced this action for declaratory relief on the issue of liability coverage. The trial court found that the insurer did not sustain its burden of proving lack of cooperation, bad faith, and substantial prejudice and that, in addition, the insurer did not make a diligent effort to contact Davis or to investigate the matter. Travelers appeals from an order for judgment entered in favor of the plaintiff administratrix.

The sole question on appeal is whether the trial court's finding that the insured failed to prove lack of cooperation is sustained by the evidence as a whole.

**1–2.** It is well settled that the insurer has the burden of proving a substantial and material lack of cooperation resulting in substantial prejudice to its position. *White v. Boulton*, 259 Minn. 325, 107 N.W.2d 370 (1961). Whether the insured has breached the cooperation clause contained in an insurance policy is a question of fact. *See, e.g., Caron v. Farmers Ins. Exchange*, 252 Minn. 247, 90 N.W.2d 86 (1958). The trial court's findings on this issue will be affirmed if they are supported by the evidence as a whole and unless they are clearly erroneous. *See, e.g., Noehl v. Midwest Empire, Inc.*, 298 Minn. 565, 215 N.W.2d 487 (1974); *Juvland v. Plaisance*, 255 Minn. 262, 96 N.W.2d 537 (1959).

The question of lack of cooperation due to the failure of an insured to provide the insurer with statements and testimony was last addressed in *White v. Boulton,* 259 Minn. 325, 107 N.W.2d 370 (1961). There the plaintiff, a passenger in the defendant's car, commenced an action against the defendant for injuries received in an automobile accident. Although the defendant's insurer repeatedly urged the defendant to prepare for trial and to give statements relating to the case, the defendant refused, allegedly because he was too busy at work. The plaintiff obtained a default judgment; the insurer's disclaimer of liability was based upon the defendant's lack of cooperation. *Id.* at 327, 107 N.W.2d at 371.

On appeal, we reversed the trial court's finding that the insured had refused to cooperate and instead concluded that the insurer had failed to sustain its burden of proof. We noted that it was not sufficient to show a lack of cooperation in consultation or in testifying at trial, and instead concluded that the insurer must show substantial prejudice. We examined the possible defenses of the insured and concluded that the record lacked evidence that the insured's failure to give statements or appear at trial resulted in prejudice to the insurer. *Id.* at 329, 107 N.W.2d at 372.

▮▮ We find ample evidentiary support for the trial court's conclusions that the insurer did not prove substantial prejudice or lack of cooperation. *See White v. Boulton,* 259 Minn. 325, 107 N.W.2d 370 (1961); *Juvland v. Plaisance,* 255 Minn. 262, 96 N.W.2d 537 (1959).

▮▮ 3. Our reaffirmation of the common-law standard is consistent with Minn. Stat. § 65B.15, subd. 1 (1980), which provides in part as follows:

No cancellation or reduction in the limits of liability of coverage during the policy period of any policy shall be effective unless notice thereof is given and unless based on one or more reasons stated in the policy which shall be limited to the following:

\*      \*      \*      \*      \*      \*

(6) The named insured knowingly failed to give any required written notice of loss or notice of lawsuit commenced against him, or, when requested, refused to cooperate in the investigation of a claim of defense of a lawsuit.

This section does not express a legislative intention to modify the common-law standard requiring the breach of a policy cooperation clause to be substantial and result in prejudice to the insurer. Instead, the purpose of section 65B.15, subd. 1, is to limit the situations in which an insurer may cancel coverage.

▮▮ 4. In conclusion, we find that the trial court's determination that the insurer failed to meet its burden of proof is supported by the evidence as a whole. When an insurer alleges that a lack of cooperation is based upon an insured's failure to give statements, it is incumbent upon the insurer to show that it acted diligently to secure the insured's cooperation. *See, e.g., Thrasher v. United States Liability Ins. Co.,* 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967). The insurer has failed to make the requisite showing. Instead, the record establishes that the insurer's agent's attempts to contact Davis or otherwise investigate the claim were minimal and perfunctory.

The record also suggests that Davis did not intentionally avoid or fail to cooperate with the insurer. Davis consistently asserted that he was not the driver of the automobile and that therefore Travelers was not involved. In addition, Davis contacted Grayson and left his employment telephone number and an address where he could be contacted.

The insurer was also unable to sustain its burden of establishing prejudice. Its only specific allegation of prejudice was its claim that it was unable to ascertain the names of the bars Davis visited on the date of the accident and that it therefore was unable to prosecute potential dram shop actions. Grayson could have obtained this information and the relevant police report data from other sources, but failed to do so. Significantly, the insurer also did not speci-

fy what additional or necessary information it could have acquired from Davis. This showing is made necessary by the fact that Davis lacked specific recollection about the events surrounding the accident and could therefore arguably have supplied little information about its cause.

It is therefore our view that the trial court's findings should be affirmed as they are amply supported by the evidence as a whole.

Affirmed.