**Anthony PARR, et al., Judgment Creditors, Appellants,**

v.

**Federico GONZALEZ, Judgment Debtor, Respondent,**

**Zurich American Insurance Company, Garnishee, Respondent.**

No. A03–72.

Court of Appeals of Minnesota.

Sept. 30, 2003.

Considered and decided by LANSING, Presiding Judge, KALITOWSKI, Judge, and SCHUMACHER, Judge.

## OPINION

KALITOWSKI, Judge.

Appellants Anthony and Tamara Parr challenge the decision by the district court granting summary judgment in favor of respondent Zurich American Insurance Company, arguing that the district court erred by finding as a matter of law that the insurer's policy with the insured does not provide coverage for appellants' loss.

## FACTS

Appellants entered into a contract with Midwest Cedar Timberoof (Midwest) to replace the roof on their home. Midwest hired Federico Gonzalez as a subcontractor on the project. On April 29, 1999, Zurich American Insurance Company (Zurich) issued a one-year Commercial General Liability (CGL) policy to Gonzalez. Because Gonzalez failed to make the payments on the policy, the policy was canceled on July 31, 1999.

Gonzalez performed work on appellants' roof on May 1 and 2, 1999, while the CGL policy was still in effect. After Gonzalez finished the work on the roof, appellants noticed that the vent cap on their roof was damaged. Appellants called Terry Kiefer, a salesman from Midwest, and asked Kiefer to replace the damaged vent cap. On May 18, 1999, Kiefer replaced the damaged cap. But the record indicates that Kiefer used the wrong sized cap, which resulted in a blockage of the vent pipe.

In December 1999, appellants discovered large amounts of mold behind the walls, under the floors, and in the attic of their home. This property damage was the result of excess condensation created by the obstructed vent pipe. Appellants were

Lewis A. Remele, Jr., Kevin P. Hickey, Anne C. Towey, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, MN, for appellants.

Federico Gonzalez, Fort Worth, TX, pro se respondent.

Jerome B. Abrams, Lauris Heyerdahl, Abrams & Smith, Minneapolis, MN, for respondent Zurich American Insurance Company.

forced to leave the house during the clean up process and lived in temporary housing for nearly a year. Eventually the house had to be completely rebuilt, and appellants moved back into their rebuilt home at the end of 2000.

Appellants brought a cause of action for negligence against Midwest, Kiefer, and Gonzalez. In the amended complaint, appellants claimed that all named defendants were jointly and severally liable for the massive property damage. Gonzalez was personally served with the amended complaint in June 2001. And in September and October 2001, appellants sent letters to Zurich and its agents informing Zurich of the claim against Gonzalez and their intent to seek a default judgment. Zurich then wrote letters to Gonzalez in October and November 2001 requesting his cooperation with the claim. But Gonzalez never contacted Zurich, and Zurich never contacted appellants or appellants' attorneys seeking information about the claim.

After failing to hear from either Gonzalez or Zurich, appellants brought a motion for a default judgment against Gonzalez. A default judgment was entered against Gonzalez in the amount of $600,000. Subsequently, the district court issued an order allowing appellants to bring a supplemental garnishment complaint against Zurich, finding that appellants had shown probable cause that Zurich could be liable under its policy for the default judgment against Gonzalez.

Zurich has made no attempt to vacate the default judgment. Rather, at the garnishment proceeding, Zurich brought a summary judgment motion denying coverage, arguing that (1) the CGL policy was not triggered by Gonzalez's actions because any damage to appellants' home did not occur until after Gonzalez's policy with Zurich expired in July 1999; and (2) Gonzalez breached the conditions of the cover-age by not cooperating and communicating with Zurich about the claim in any way.

Appellants also brought a motion for summary judgment, and on January 23, 2003, the district court issued an order: (1) stating that the default judgment established liability against Gonzalez; (2) rejecting Zurich's coverage defenses, finding that Zurich's policy with the insured was triggered when Gonzalez damaged the vent cap in May 1999 and that Zurich failed to show prejudicial effect from Gonzalez's failure to notify Zurich of the claim; and (3) concluding that the property damage to appellants' home was caused by Kiefer, not Gonzalez. Because Zurich's policy did not provide coverage for Kiefer's actions, the district court granted Zurich's motion for summary judgment.

## ISSUES

1. Did the district court err by finding that the insured did not cause the property damage alleged by appellants in their amended complaint?

2. Did the district court err in rejecting the insurer's coverage defenses?

## ANALYSIS

On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact; and (2) whether the lower court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### I.

Appellants contend that the district court erred in finding that appellants failed to establish that Gonzalez caused the prop-

erty damage to appellants' home, and, because of this, appellants argue that the district court erred in determining that Zurich's policy with Gonzalez does not provide coverage for appellants' property damage. Because the underlying default judgment established liability against Gonzalez and because the district court rejected Zurich's coverage defenses, appellants argue that, as a matter of law, Zurich's policy with Gonzalez must cover appellants' loss. We agree.

■ "The entry of a default judgment is equivalent to an admission by the defaulting party to properly pleaded claims and allegations." *State by Humphrey v. Ri–Mel, Inc.*, 417 N.W.2d 102, 110 (Minn. App.1987), *review denied* (Minn. Feb. 17, 1988); *see also Anderson v. Sundstrom*, 307 Minn. 439, 443, 241 N.W.2d 82, 85 (1976) (noting that in a default judgment, facts alleged in the complaint that are essential to the judgment are binding on the parties in subsequent litigation). Here, appellants' amended complaint states a claim of negligence against Gonzalez. Therefore, in this subsequent garnishment proceeding, Zurich may not raise defenses that go to the merits of the underlying default judgment that established Gonzalez's negligence. *See, e.g., Johnson v. Nat'l Union Fire Ins. Co.*, 56 Misc.2d 983, 289 N.Y.S.2d 852, 853–54 (Sup.Ct. 1968) (holding that while an insurer that refuses to defend the underlying action may raise coverage defenses, the insurer is not permitted to raise defenses that go to the merits of the underlying claim), *aff'd*, 33 A.D.2d 924, 309 N.Y.S.2d 110 (1970).

■ Because causation is an element of a prima facie case of negligence, *see, e.g., Leubner v. Sterner*, 493 N.W.2d 119, 121 (Minn.1992), the issue of causation in this case involves a defense extending to the merits of appellants' negligence claim in the underlying action. Thus the district court erred in granting Zurich's motion for summary judgment based on causation. Based on the claims and allegations contained in appellants' amended complaint, appellants established through the default judgment that Gonzalez's actions caused the property damage. Because liability was established by the default judgment and was not properly an issue in this garnishment proceeding, the district court's decision improperly allowed Zurich to attack the merits of the underlying default judgment. We thus conclude as a matter of law that unless Zurich has a valid coverage defense Zurich's policy provides coverage for appellants' loss.

## II.

■ In Minnesota, a default judgment entered against the insured does not automatically establish coverage for the claim because critical coverage issues may not be resolved in the actions underlying the insured's liability for a judgment. *Silicone Implant Ins. Coverage Litigation*, 652 N.W.2d 46, 57 (Minn.App.2002), *aff'd in part, rev'd in part*, 667 N.W.2d 405 (Minn. 2003); *see also Cont'l Ins. Co. v. Bergquist*, 400 N.W.2d 199, 202 (Minn.App.1987) (finding that despite the entry of a default judgment against the insured, there was no coverage under the policy in question because all damages claimed by appellants occurred prior to the effective date of the insurance policy). Because it would be improper to impose coverage liability upon an insurer for risks not specifically undertaken by the insurer and not paid for by the insured, an insurer is permitted to raise coverage defenses that were not resolved in the underlying judgment. *See, e.g., Shannon v. Great Am. Ins. Co.*, 276 N.W.2d 77, 78 (Minn.1979); *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825 (Minn.1980) (holding that where issue of intent to injure was not necessary

or essential issue in previous action, it was nevertheless material fact for litigation in coverage action).

"Insurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992). A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). General principles of contract interpretation apply to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). Unambiguous language must be given its plain and ordinary meaning, and any ambiguity in a policy must be construed in favor of the insured. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986). Policy provisions must be interpreted according to what the insured would have reasonably understood them to mean. *Erickson v. Christie*, 622 N.W.2d 138, 140 (Minn.App.2001).

Here, Zurich presented two coverage defenses to the district court. First, Zurich argued that its policy was not triggered because the CGL policy states that Zurich will pay for property damage only if the property damage "occurs during the policy period." The policy clarifies "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Zurich argues that the affidavits presented to the district court show that the mold that resulted from the obstructed vent pipe could not have formed in appellants' home until after appellants began operating their furnace in the fall of 1999. Because Zurich's policy with Gonzalez expired in July 1999, Zurich contends that the policy does not provide coverage.

To establish or trigger coverage under an occurrence-based policy, "an insured must demonstrate that damage 'occurred' while the policy was in effect." *N. States Power Co. v. Fid. & Cas. Co.*, 523 N.W.2d 657, 659–60 n. 3 (Minn.1994) (quotation omitted). An occurrence takes place not when the policyholder engages in the wrongful act, "but the time the complaining party was actually damaged." *Singsaas v. Diederich*, 307 Minn. 153, 156, 238 N.W.2d 878, 880 (1976). Consequently, if the damage occurs outside of the policy period, the policy does not provide coverage. *See id.* at 155, 238 N.W.2d at 880–81 (holding that policy did not provide coverage where negligent repair of lift in elevator occurred during policy period, while resulting injury occurred after policy was canceled).

The CGL policy at issue defines "property damage" as

physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

Here, the undisputed facts show that the vent cap was damaged by the insured in May 1999, while the insured's policy with Zurich was still in effect. Thus, during the policy period, Gonzalez's actions resulted in an "occurrence" that caused "physical injury to tangible property." Therefore, the policy was triggered because appellants sustained property damage during the policy period as a result of the insured's actions.

Zurich argues that because the mold may not have developed until after the policy had expired there is no coverage. But when damages arise from discrete and identifiable events that occur within the policy period, the actual-injury trigger theory allows those policies on the risk at the point of initial damage to pay

for all the damages that follow. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 733 (Minn.1997). While Zurich now argues that the initial damage to the vent cap did not cause the massive property damage that resulted from the obstructed vent pipe, causation is a defense that goes to the merits of the underlying claim for negligence. And as previously discussed, Zurich may not raise such a defense since it elected not to defend the underlying claim.

Zurich also argues that the insured's breach of the notice and cooperation provision of the insurance policy resulted in substantial prejudice to Zurich, thereby excluding coverage. We disagree.

 Courts uphold notice and cooperation provisions in insurance contracts because the policy behind the requirement is to give the insurer an opportunity for prompt investigation so as to protect itself against fraudulent or exorbitant claims and, while the matter is fresh in the minds of all, to appraise and determine a disposition by way of settlement or defense. *Sterling State Bank v. Virginia Sur. Co.*, 285 Minn. 348, 354, 173 N.W.2d 342, 346 (1969). But failure to give timely notice is not fatal to an insured's claim unless the insurer was prejudiced by the delay. *Ryan v. ITT Life Ins. Corp.*, 450 N.W.2d 126, 130 (Minn.1990); *Reliance Ins. Co. v. St. Paul Ins. Cos.*, 307 Minn. 338, 342, 239 N.W.2d 922, 924–25 (1976). It is well-settled that "the insurer has the burden of proving a substantial and material lack of cooperation resulting in substantial prejudice to its position." *Rieschl v. Travelers Ins. Co.*, 313 N.W.2d 615, 618 (Minn.1981). "Whether the insured has breached the cooperation clause contained in an insurance policy is a question of fact." *Id.*

 The district court properly determined that although Gonzalez. failed to give notice of the suit or cooperate with Zurich in his own defense, Zurich failed to present any evidence raising a material fact question as to whether this substantially prejudiced Zurich's position. Even though Gonzalez did not notify Zurich of the claim, appellants sent letters that notified Zurich of the claim in both September and October 2001. Appellants also requested responses from Zurich before they proceeded with the default judgment. Thus, appellants' conduct gave Zurich a reasonable amount of time as a matter of law to investigate the claim before a default judgment was entered. *See Reliance*, 307 Minn. at 343, 239 N.W.2d at 925 (holding that an 18–month delay between service of complaint and notification of insurer did not defeat liability because the facts had not changed, the investigation would not be more difficult, and the matter had not been reduced to judgment).

 Zurich contends that although it was on notice of the claim, without cooperation from Gonzalez it did not have the information necessary to defend the claim. But Zurich presented no evidence that showed that Zurich tried to obtain relevant information about the claim from any sources other than Gonzalez, even though relevant information was available to Zurich based on the investigation and discovery that had already taken place in the case. Further, Zurich could have had access to this information if Zurich had requested it from appellants. Moreover, the record indicates that Zurich only attempted to contact Gonzalez on two occasions, and both of those attempts were through the mail. Zurich never attempted to call or personally communicate with Gonzalez. Because there was no evidence that Zurich acted diligently to either secure Gonzalez's cooperation or obtain information about the claim, Zurich failed to create a genuine issue of material fact showing that Gonzalez's lack of cooperation substantially prej-

udiced its position. *See Rieschl*, 313 N.W.2d at 618 (stating that "it is incumbent upon the insurer to show that it acted diligently to secure the insured's cooperation" and noting that the insurer could have obtained relevant information from sources other than the insured).

## DECISION

The issue of causation in this garnishment proceeding involves a defense extending to the merits of appellants' claim in the underlying action. Because the default judgment in the underlying action, which the insurer chose not to defend, established the insured's liability, the insurer is not permitted to raise such a defense in the garnishment proceeding. In addition, because none of the insurer's coverage defenses defeat coverage, as a matter of law, the insurer's policy provides coverage for appellants' loss. We therefore remand this matter to the district court to allow the garnishment of the policy proceeds to satisfy the judgment against the insured.

**Affirmed in part, reversed in part, and remanded.**