James KAUFMAN, Appellee,

v.

Peter VAN SANTEN d/b/a Blue Mound Dairy Farm, Appellant.

No. 82-1274.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1982.

Decided Jan. 6, 1983.

Gale Fisher, P.C., Sioux Falls, S.D., for appellee.

Benjamin Vander Kooi, Jr., Vander Kooi Law Offices, Luverne, Minn., for appellant.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and DUMBAULD,* Senior District Judge.

HENLEY, Senior Circuit Judge.

In this diversity action based on breach of warranty, defendant Peter Van Santen appeals the judgment of the district court[1] awarding plaintiff James Kaufman damages in the amount of $33,800.80. We affirm.

Kaufman, a dairy farmer in South Dakota, purchased eleven heifers from Van Santen, a cattle dealer in Minnesota, in January, 1979, for a price of $11,220.00. At that time, Kaufman asserts that he had between forty-two and forty-four cows and was licensed as a grade A, class A producer. Kaufman testified that when he and his brother picked up the eleven heifers in Minnesota, he was reluctant to take a certain

---

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Honorable John Bailey Jones, United States District Judge, District of South Dakota.

black heifer because her udder felt lumpy. Van Santen's son, Steve, who was apparently responsible for handling the transaction, allegedly assured him that all the cows were guaranteed and stated something to the effect that: "You take them home and if they don't work out for you, you don't own them." Kaufman's brother testified that Steve Van Santen expressly guaranteed replacement of any cows that had mastitis.[2] In addition, Peter Van Santen testified that all the cattle he sells carry a guarantee that they are sound and fit for milk production.

Kaufman decided to take all eleven heifers. Shortly after introducing the new heifers into his herd, the black heifer allegedly became seriously infected and was sold for slaughter. Mastitis infections soon developed in several other Van Santen heifers, which were also sold. In addition, many of the cows in the remainder of the herd developed mastitis infections and were sold over the course of the next year. Kaufman introduced sales slips and records to support his testimony that he lost $6,626.00 on the sale of the Van Santen heifers and $10,504.00 on the sale of the other cows. He also offered evidence of decreased milk production following the outbreak of mastitis with a resulting loss of profits in the amount of $30,842.50, and veterinarian bills totalling $597.37. Total damages claimed amounted to $48,569.87.

The jury returned a verdict of $33,800.80. Van Santen's motions for judgment n.o.v., new trial or to amend judgment were denied, as was his subsequent motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[3]

■ Appellant contends that the trial court erred in denying his motion for judgment n.o.v. because the evidence was insufficient to support the verdict. Judgment n.o.v. is proper only if reasonable persons,

viewing "the evidence in the light most favorable to sustaining the jury's verdict and giv[ing] the prevailing party the benefit of all reasonable inferences," could not differ as to the conclusion. *Harris v. Pirch,* 677 F.2d 681, 683 (8th Cir.1982). A review of the record discloses evidence indicating that at least one of Van Santen's heifers was possibly infected; that mastitis may involve a contagious infection that can be transmitted from cow to cow; that Kaufman had not had significant mastitis problems before the purchase of the Van Santen heifers; that shortly after the introduction of the Van Santen heifers into Kaufman's herd, a mastitis infection developed in a number of cows; that Kaufman sold the infected cows at a loss; that mastitis can impair a cow's milk producing capacity; and that following the outbreak of the infection, Kaufman suffered losses from decreased milk production.

We recognize that there was some conflicting evidence in the record. However, "[i]t is for the jury to resolve questions about conflicting evidence and questions as to the weight and credibility of witnesses." *United States v. Todd,* 657 F.2d 212, 216 (8th Cir.1981), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1288, 71 L.Ed.2d 469 (1982). We conclude that the trial court did not err in denying defendant's motion for judgment n.o.v.

■ Appellant next contends that his motion for new trial or remittitur should have been granted on the ground that the damage award was excessive due to the inflammatory and prejudicial remarks of plaintiff's counsel during closing argument.[4] We find no merit in appellant's assertion that counsel's remarks were extravagant and intemperate to such a degree as to render the verdict a result of passion and prejudice; nor can we say that the

---

**2.** Mastitis is an inflammation of the milk-producing tissue in the udder that can result in infection and decreased milk production.

**3.** Appeal from the denial of the Rule 60(b) motion has been consolidated with appeal from judgment.

**4.** It appears that plaintiff's counsel suggested that defendant was after a "quick buck" by "dumping" infected cattle in South Dakota.

evidence of lost profits, based on Kaufman's business records, was too speculative or uncertain. *See Olson v. Aldren,* 84 S.D. 292, 170 N.W.2d 891, 894–95 (1969); *cf. Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634 (8th Cir.1975) (recovery of lost profits under Iowa law).

We turn now to the denial of Van Santen's Rule 60(b) motion. As grounds for relief under Rule 60(b), appellant contends that he was unfairly prejudiced by the unanticipated change in the testimony of Melvin Konrad concerning the presence of mastitis infection in Kaufman's herd prior to the purchase of the eleven heifers, and that post-trial investigation disclosed new evidence that Kaufman had in fact experienced previous mastitis problems. It appears that during deposition, Konrad, who was the plant manager of Dakota Cheese Company which bought Kaufman's milk, testified that the company records indicated that Kaufman had an abnormal somatic cell count in September, 1978.[5] However, Konrad testified at trial that he had made a mistake when copying the records which instead showed that the somatic cell count was within the normal range. In the course of further investigation after trial, Van Santen discovered records of the South Dakota Department of Agriculture indicating a somewhat higher level of somatic cells during that period. Appellee asserts that the state nevertheless classified Kaufman's milk as "satisfactory."

■ The district court denied the Rule 60(b) motion on the ground that these records as well as the records relied on by Konrad were "readily and equally" available to appellant prior to trial and that "the issues were fairly tried and submitted to the jury." We find no abuse of discretion. *See Knox v. Lichtenstein,* 654 F.2d 19 (8th Cir.1981).

We find without merit appellant's remaining arguments concerning evidentiary rulings and instructions. The judgment of the district court is affirmed.

---

**5.** Somatic cell counts are used to detect the